IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN MARTIN, on behalf of himself and others similarly situated, | ) ) ) | CASE NO. 4:18-cv-00973 |
| Plaintiff, | ) ) ) | JUDGE JOHN R. ADAMS |
| vs. | ) ) | |
| EXTRUDEX ALUMINUM, INC., | ) ) ) | **JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT** |
| Defendant. | ) | |

## I.  INTRODUCTION

Representative Plaintiff, John Martin, and Defendant, Extrudex Aluminum, Inc. (collectively "Defendant"), respectfully move this Court for an Order approving the Fair Labor Standards Act ("FLSA") settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as **Exhibit A**. The Settlement was reached by experienced counsel during arms-length, good faith negotiations with the assistance of Magistrate Judge Kathleen Burke. If approved, it will provide substantial individual payments to the Representative Plaintiff, one Opt-In Plaintiff and 460 additional Eligible Settlement Participants (collectively, "Settlement Members" or "Plaintiffs").

The settlement documents submitted for approval or entry by the Court consist of the following:

**Exhibit A:** Joint Stipulation of Settlement and Release with Exhibits.

**Exhibit B:** Proposed Order of Dismissal and Approving Settlement

**Exhibit C:** Declaration of Shannon M. Draher

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

A.     The Action and Settlement.

Representative Plaintiff, John Martin, filed this action on April 27, 2018.  He alleged that Defendant had a companywide policy of rounding its employees' clock-in and clock-out times in a manner that resulted in employees always losing credit for time worked.  He alleged that this policy resulted in Plaintiffs not being paid for all of the overtime compensation they earned.  Representative Plaintiff also alleged that Defendant failed to include attendance bonuses in its employees' regular rates of pay for purposes of computing overtime compensation, which resulted in Plaintiffs not being paid at the correct overtime rates.  (Draher Decl., ¶ 8).

Defendant answered the Complaint and denied any liability or wrongdoing of any kind.

The Parties agreed to conditional certification.  They further agreed to delay sending notice to the putative class members pending mediation.  (Draher Decl., ¶ 10).

For purposes of mediation, Defendant produced Plaintiffs' daily punch in and out records for the three-year period from April 2015 to April 2018.  Plaintiffs' Counsel, in conjunction with their data analyst, computed the Plaintiffs' alleged overtime damages on a workweek by workweek basis.

At the mediation, the parties presented their arguments and engaged in a robust and vigorous debate and spent several hours meeting with the Magistrate. In an effort to reach a compromise and to avoid the expense and burden of litigation, the parties reached a settlement of claims asserted in the pending action.

B.     The Settlement Terms.

If approved by the Court, the Settlement will cover 461 Settlement Group Members, including the Representative Plaintiff.  (*See* **Exhibit A** at Exhibits 1 and 2).   The total settlement amount is $140,000.00, which sum will cover: (a) all of the individual payments to the Plaintiffs;

(b) Representative Plaintiff's Service Payment; and (c) Plaintiff's Counsel's attorneys' fees and expenses. (Draher Declaration, ¶ 14). Plaintiff's Counsel believes the proposed Settlement is in the best interests of the Representational Plaintiff and the Group Members. (Draher Declaration, ¶ 17).[1]

$83,440.92 of the settlement amount will be divided into individual payments to the Plaintiffs based on their alleged overtime damages as calculated by Plaintiffs' Counsel and approved by Defendant. (*See* **Exhibit A** at Exhibit 1). These individual payments will be allocated as follows: 50% to the settlement of wage claims and 50% to the settlement of claims for statutory penalties. (Draher Declaration, ¶ 15).

$5,000.00 of the settlement amount will be paid to Representative Plaintiff as a Service Payment, in addition to his individual payment. $51,559.08 of the settlement amount will be paid to Plaintiffs' Counsel for attorneys' fees and expenses ($46,666.00 in fees and $4,893.08 in expenses) incurred in the Action. (Draher Declaration, ¶ 16).

Each Eligible Settlement Participant will be required to execute a Consent to Join Form and Settlement Release as a condition to receiving his or her settlement payment. A copy of the Consent to Join and Settlement Release is attached to the Agreement as Exhibit 3. Plaintiffs' Counsel will file the Eligible Settlement Participants' Consent to Join forms with the Court as they are received.

In exchange for these payments and other consideration provided for in the Agreement, the Action will be dismissed, and the Settlement Group Members will release Defendant from federal and state wage-and-hour claims, rights, demands, liabilities and causes of action asserted in the Action Complaint, including but not limited to claims for unpaid wages, unpaid overtime

---

[1] In the event the Court desires specific information regarding Plaintiffs' and Defendant's damage models and each party's models of alleged unpaid overtime amounts due Plaintiffs, such information will be submitted upon request.

3

compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act, and any applicable state wage statute where the Settlement Group Members may have worked for Defendants, including but not limited to the Ohio Minimum Fair Wage Standards Act for the Released Period, which is defined as the period of April 1, 2015, until the date on which the Court enters an Order approving the Settlement.  A proposed Order of Dismissal and Approving Settlement is attached hereto as **Exhibit B**.

### III.    THE PROPRIETY OF APPROVAL

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA.  As shown in the attached Declaration of Shannon M. Draher, and as explained below, Court approval is warranted on all scores.

#### A.    The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness."  *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'"  *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

4

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. As shown below and in the Declaration of Shannon M. Draher, this standard supports approval of the Settlement.

### 1) No Indicia of Fraud or Collusion Exists

The Parties' counsel each have extensive experience litigating FLSA claims, including claims for unpaid overtime. The Agreement was achieved only after arms-length and good faith negotiations between the Parties with the assistance of Magistrate Judge Kathleen Burke. (Draher Declaration, ¶ 12). As such, there is no indicia of fraud or collusion.

### 2) The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the Parties continue to disagree over the merits of Plaintiffs' claims. Plaintiffs claim that Defendant had an improper rounding policy, which denied Plaintiffs' of all of their overtime pay. Defendant argues that Plaintiffs were not working during the time they claim their time punches were improperly rounded. In addition, the Parties continue to disagree about whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to

Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.  (Draher Declaration, ¶¶ 18-22).

### 3) Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation and discovery prior to negotiating the Settlement.  Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate complaint for the Court and Defendants.  After filing the Action, the Parties engaged in informal discovery.  Thus, the legal issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

### 4) The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result.  Moreover, in the present case, Defendant raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well.  Continued litigation would be risky for all.  (Draher Decl., ¶¶ 18-22).

### 5) Uncertainty of Recovery Supports Approval

Plaintiffs' range of possible recovery is also open to dispute.  Even if Plaintiffs succeeded on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

### 6) Experienced Counsels' Views Favor Approval

The Parties' counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. Counsel support the Settlement as fair and reasonable, and in the best interest of the Plaintiffs as a whole, as described in the Declaration of Shannon M. Draher. (Draher Decl., ¶¶ 5-7, 17).

B. **The Settlement Distributions Are Fair, Reasonable and Adequate**

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for the Plaintiffs.

    1) **The Individual Payments Are Reasonable and Adequate**

All individual payments will be calculated proportionally on each Settlement Class Members' overtime damages during the three-year limitations period. (Draher Decl., ¶15).

    2) **Representative Plaintiff's Service Award Is Proper and Reasonable**

Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Representative Plaintiff contributed significant time, effort, and detailed factual information enabling the Parties to successfully resolve this matter. His time and efforts support the requested service payment. (Draher Declaration, ¶ 23).

### 3) The Attorneys Fees and Expenses to Plaintiffs' Counsel Are Proper and Reasonable

After the Court has confirmed that the terms of settlement are fair to Plaintiffs, it may review the Parties' agreement as to the provision of fees and costs to Plaintiffs' Counsel. The Settlement reflects Defendants agreement to pay Plaintiffs' Counsel $51,559.08 in attorneys' fees and costs ($46,666 in attorneys' fees and $4,893.08 in costs). This amount represents one-third of the total settlement amount.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile*

8

*& Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here.  Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

In determining the reasonableness of the one-third fee, the *Bessey* court considered the comparative data about Rule 23 class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm.  The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study").  This

9

> data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement.

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. As discussed above, each Plaintiff who participates in the Settlement will receive approximately 78% or 53% of their alleged overtime damages during the two-year limitations period, depending on whether they are an Existing Opt-In Plaintiff or an Eligible Settlement Participant. Plaintiffs will also receive additional overtime damages for a third-year. Therefore, the attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiffs and the Class.

The attorneys' fees requested by Plaintiffs' Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing their potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendants could have succeeded. Therefore, the Plaintiffs were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here and warrants approval.

10

Expenses are estimated to be approximately $4,893.08. All expenses were incurred during the course of the litigation of this Action or will be incurred during the administration of the Settlement. (Draher Decl., ¶ 25).

## IV. CONCLUSION

The Parties submit that this Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order of Dismissal and Approving Settlement; (2) approve Plaintiffs' Counsel's request for attorneys' fees, costs, and expenses; (3) approve the Representative Plaintiff's Service Payment; and (4) retain jurisdiction to enforce the Settlement.

Dated: February 8th, 2019

Respectfully submitted,

| | |
|---|---|
| */s/ Shannon M. Draher* | */s/ Richard L. Goodman* |
| Hans A. Nilges (0076017) | By: Richard L. Goodman (#0022520) |
| Shannon M. Draher (0074304) | RICHARD L. GOODMAN CO., L.P.A. |
| NILGES DRAHER LLC | 720 Youngstown-Warren Road |
| 7266 Portage Street NW, Suite D | Suite E |
| Massillon, Ohio 44646 | Niles, Ohio 44446 |
| Telephone: (330) 470-4428 | (330) 652-8989 Phone |
| Facsimile: (330) 754-1430 | (330) 652-9652 Fax |
| Email: sdraher@ohlaborlaw.com | E-mail: Richard@rlgoodmanlawfirm.com |
| hans@ohlaborlaw.com | |
| *Counsel for Plaintiff* | *Counsel for Defendant* |

        <u>s/Evelyn P. Schonberg</u>
Evelyn P. Schonberg (0020176)
Ross, Brittain & Schonberg Co., LPA
6480 Rockside Woods Boulevard, South
Suite 350
Cleveland, Ohio 44131
Tel: 216-447-1551 / 216-447-1554
Email: lynns@rbslaw.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of February, 2019, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                        */s/ Shannon M. Draher*
                                        *Counsel for Plaintiff*